FILED
NOV 21 2007
Nov. 21, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Yury Selyutin,  )
   Plaintiff,  ) 07CV6598
vs.  )
   ) JUDGE LEFKOW
Jewish Federation,  )
   Defendant.  ) MAG. JUDGE MASON

JH

## COMPLAINT

Yury Selyutin, the Plaintiff, by and through his attorney, Stuart K. Jones, alleges that the Defendant, discriminated against him on the basis that: (1) in violation of Americans with Disabilities Act, 42 U.S.C. 12101 et seq. (hereinafter the ADA), it fired him because it perceived him as having a disability; and (2) discriminated against him on the basis of his age, religion and national origin in the terms and conditions of employment, all in violation of, respectively, the Age Discrimination in Employment Act (hereinafter the "ADEA") and Title VII of the Civil Rights Act of 1964 ("CRA"), and in support of this complaint he states as follows:

### NATURE OF THE ACTION

1. This complaint is brought for reinstatement to employment, recovery of back pay, compensatory and punitive damages, costs of the lawsuit, attorney fees, and other appropriate recovery on the basis that the Defendant failed to accommodate the Plaintiff's disability, and discharged him from employment because it perceived him to have a disability, and discriminated against him in the terms and conditions of employment because of his age, national origin and religion.

## JURISDICTION

2. This court has jurisdiction over the subject matter of this case under 28 U.S.C. Section 1331, 28 U.S.C. Section 1334.

3. The violation alleged herein was committed in the Northern District of Illinois.

4. At all times relevant to this action Mr. Selyutin was a resident of the Northern District of Illinois, having resided at 7131 W. Carol Street, Niles, Illinois.

5. At all times relevant to this action the Jewish Federation was doing business in the Northern District of Illinois, with its principle office at 30 South Wells Street, Chicago, Illinois.

6. At all times relevant to this action the Defendant was an employer within the meaning of the Act because they employed more than 15 employees during 2006.

7. On or about August 26, 2007, Mr. Selyutin received a copy of a Notice of Dismissal and Rights from the Equal Employment Opportunity Commission, and this complaint is filed within 90 days of receipt of that document, a copy of which is attached hereto and made a part hereof.

## PARTIES

8. At all times relevant to this action Mr. Selyutin was an employee of the Defendant.

9. At all times relevant to this action the Defendant, The Jewish Federation, Inc. was engaged in the business of providing charitable services.

## STATEMENT OF FACTS

10.     On or about April 23, 1990, the Jewish Federation (hereinafter "JF") hired Mr. Selyutin as a maintenance worker. He was approximately 50 years old at that time.

11.     In 1990 JF assigned Mr. Selyutin to work at a building in Buffalo Grove. During the following fourteen years he performed his job well and received a number of commendations. His wages steadily increased from $6.50 per hour to $13.45 per hour in 2006. He had only one disciplinary write-up during that time - a warning for tardiness, the only time he was tardy until that time.

12.     In or about 2004, JF assigned Mr. Selyutin to work at its building in Northbrook. His duties required that he use a ladder frequently to change lightbulbs and balasts, clear air vents, hang signs, change filters, etc.

13.     In March, 2005, Robert Reid became his manager.

**Count I.     Discharge Because of a Perceived Disability**

14.     In late summer of 2006, only several months before JF fired him, Mr. Selyutin, then 67 years of age, began to experience serious pain in his legs while standing on a ladder. The pain was so serious that he could not walk. He reported this to Robert Reid, who told Mr. Selyutin to see a physician and to go home.

15.     Mr. Selyutin took eight or nine days off work to obtain treatment for the pain.

16.     Soon after this incident of leg pain and the leave of absence, Mr. Reid began to nit-pick Mr. Selyutin and to criticize his work unjustifiably in an effort to develop reasons to fire him.

17.     For example, Mr. Reid found fault with Mr. Selyutin for leaving some nails on the roof of the building prior to an inspection of the building by JF's Executive Director, Richard Katz. Mr. Reid made this criticism even though it had been his duty to pre-inspect the building prior to the inspection by Mr. Katz.

18.     During the inspection Mr. Katz was overheard saying, "Is Yury still [working] here?"

19.     Then, about one month after the first incident of leg pain Mr. Selyutin again experienced pain his leg while he was on a ladder. Mr. Selyutin told Mr. Reid about the leg pain again, and again Mr. Reid told him to see a doctor. Again, MR. Selyutin took about eight or nine days off work to recover from the leg pain.

20.     At the end of October, 2006, Mr. Reid gave Mr. Selyutin a poor evaluation that grossly exaggerated "mistakes" that Mr. Selyutin had allegedly made, and fabricated other incidents of alleged poor performance.

21.     JF put him on probation and gave him 30 days to improve.

22.     Then, in December, 2006, Mr. Reid gave Mr. Selyutin a final evaluation that was very critical of his work, and he fired Mr. Selyutin, citing reasons that were unusually trivial, such as that the Menorah that he had rebuilt was not exactly horizontal, and that he had spliced a pool lane divider rather than replacing the whole lane divider.

23. Prior to firing Mr. Selyutin, Mr. Reid failed to tell Mr. Selyutin that he believed that the Menorah was defective and failed to warn him about many other alleged problems with his work.

24. The reasons stated by JF for firing him were a pretext for the actual motive for firing him, i.e., that they believed he was disabled.

25. The true reasons that JF fired MR. Selyutin is that they perceived him to have a disability.

26. By treating him in the manner described above, JF discriminated against Mr. Selyutin in violation of the Americans with Disabilities Act.

27. As a result of the treatment described above, Mr. Selyutin experienced emotional distress damages, including humiliation, depression, fear and anger.

WHEREFORE, the Plaintiff prays that this court award him $300,000 in emotional distress damages, as well as attorneys fees, court costs, and such other relief as the court deems to be appropriate.

## COUNT II.

### Age Discrimination in the Terms and Conditions of Employment

28 - 41. As and for paragraphs 28 through 41, the Plaintiff incorporates paragraphs 1 through 13 of this Complaint.

42. In 2004, when Mr. Selyutin began working at the Northbrook facility, he was the only man in his 60's who worked as a maintenance worker there. The other workers were much younger.

43. Brian DeAngelis was the Building Manager. Robert Reid was the Assistant Manager. Erik Olson and Jose (last name unknown) were maintenance workers.

44. Brian DeAngelis was hostile toward Mr. Selyutin from the beginning. He usually ignored Mr. Selyutin or made offensive faces when he looked at him. When Mr. Selyutin tried to communicate with him, Mr. DeAngelis pretended that he did not understand, or gave him a "what-are-you-looking-at?" look. He also often talked in a disrespectful manner to Mr. Selyutin.

45. Mr. DeAngelis routinely allowed other employees to get help with projects, but denied such help to Mr. Selyutin. He also routinely assigned him to do heavier manual labor than the other workers.

46. When Robert Reid became the Building Manager, he discriminated against Mr. Selyutin by disciplining him more severely than younger employees. On one occasion he wrote up Mr. Selyutin for wearing sandals while standing on a ladder. Other workers routinely wore sandals with impunity.

47. Another worker, Jose (last name unknown) regularly missed work and performed poorly, but JF did not discipline him.

48. JF also routinely required Mr. Selyutin to work overtime and double shifts when another employee failed to appear for work. When Mr. Selyutin expressed feelings of fatigue after working the extended hours, Mr. Reid suggested to him that he should retire if it was too hard for him to work in maintenance.

49. By treating him in the manner described, JF discriminated against Mr. Selyutin because of his age in violation of the Age Discrimination in Employment Act.

50. As a result of the treatment described above, Mr. Selyutin experienced emotional distress damages, including humiliation, depression, fear and anger.

WHEREFORE, the Plaintiff prays that this court award him $300,000 in emotional distress damages, attorneys fees, court costs, and such other relief as the court deems to be appropriate.

## COUNT III.

### National Origin Discrimination in the Terms and Conditions of Employment

51 - 64. As and for paragraphs 51 through 64, the Plaintiff incorporates paragraphs 1 through 15 of this Complaint.

65. In 2004, when Mr. Selyutin began working at the Northbrook facility, he was the only former Russian citizen who worked as a maintenance worker in that department.

66. Brian DeAngelis was Mr. Selyutin's Manager. Robert Reid was the Assistant Manager. Erik Olson and Jose were maintenance workers. None was Russian.

67. Brian DeAngelis was hostile toward Mr. Selyutin from the beginning. He usually ignored Mr. Selyutin and made offensive faces when he looked at him. When Mr. Selyutin tried to communicate with him, Mr. DeAngelis pretended that he did not understand, or gave him a "what-are-you-looking-at?" look. He also often talked in a disrespectful manner to Mr. Selyutin.

68. Mr. DeAngelis routinely allowed non-Russian-born employees to get help with projects, but denied such help to Mr. Selyutin. He also routinely assigned him to do heavier manual labor than the other workers.

69. When Robert Reid became the Manager, he discriminated against Mr. Selyutin by disciplining him more severely than non-Russian-born employees. On one occasion he wrote up Mr. Selyutin for wearing sandals while standing on a ladder. Other workers routinely wore sandals with impunity.

70. Another worker, Jose (last name unknown) regularly missed work and performed poorly, but JF did not discipline him.

71. JF also routinely required Mr. Selyutin to work overtime and double shifts when another employee failed to appear for work. When Mr. Selyutin expressed feelings of fatigue after working the extended hours, Mr. Reid suggested to him that he should retire if it was too hard for him to work in maintenance.

72. By treating him in the manner described above, JF discriminated against Mr. Selyutin because of his national origin in violation of the Civil Rights Act of 1964.

73. As a result of the treatment described above, Mr. Selyutin experienced substantial emotional distress damages, including humiliation, depression, fear and anger.

WHEREFORE, the Plaintiff prays that this court award him $300,000 in emotional distress damages, attorneys fees, court costs, and such other relief as the court deems to be appropriate.

## COUNT III.

**Religious Discrimination in the Terms and Conditions of Employment**

74 - 87.   As and for paragraphs 74 through 87, the Plaintiff incorporates paragraphs 1 through 13 of this Complaint.

88.   In 2004, when Mr. Selyutin began working at the Northbrook facility, he was the only Jewish person who worked as a maintenance worker in that department.

89.   Brian DeAngelis was Mr. Selyutin's Manager. Robert Reid was the Assistant Manager. Erik Olson and Jose were maintenance workers. None was Jewish.

90.   Brian DeAngelis was hostile toward Mr. Selyutin from the beginning. He usually ignored Mr. Selyutin and made offensive faces when he looked at him. When Mr. Selyutin tried to communicate with him, Mr. DeAngelis pretended that he did not understand, or gave him a "what-are-you-looking-at?" look. He also often talked in a disrespectful manner to Mr. Selyutin. He did not act or talk in these manners with non-Jewish workers in his department.

91.   Mr. DeAngelis routinely allowed non-Jewish employees to get help with projects, but denied such help to Mr. Selyutin. He also routinely assigned him to do heavier manual labor than the other workers.

92.   When Robert Reid became the Manager, he discriminated against Mr. Selyutin by disciplining him more severely than non-Jewish employees. On one occasion he wrote up Mr. Selyutin for wearing sandals while standing on a ladder. Other workers routinely wore sandals with impunity.

93. Another worker, Jose (last name unknown) regularly missed work and performed poorly, but JF did not discipline him.

94. JF also routinely required Mr. Selyutin to work overtime and double shifts when another employee failed to appear for work. When Mr. Selyutin expressed feelings of fatigue after working the extended hours, Mr. Reid suggested to him that he should retire if it was too hard for him to work in maintenance.

95. By treating him in the manner described above, JF discriminated against Mr. Selyutin because of his religion in violation of the Civil Rights Act of 1964.

96. As a result of the treatment described above, Mr. Selyutin experienced substantial emotional distress damages, including humiliation, depression, fear and anger.

WHEREFORE, the Plaintiff prays that this court award him $300,000 in emotional distress damages, attorneys fees, court costs, and such other relief as the court deems to be appropriate.

/s/ Stuart K. Jones
Stuart K. Jones
Plaintiff's attorney

Stuart K Jones
150 North Michigan Avenue
Suite 2600
Chicago, Illinois 60601
(312) 602-2424

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Yury Selyutin<br>7131 W. Carol Ct<br>Niles, IL 60714 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |
|---|---|---|---|

CERTIFIED MAIL 7099 3400 0018 8813 6768

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2007-02021 AMENDED | Gem Lock,<br>Investigator | (312) 886-1663 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____    8/23/07
John P. Rowe,                       (Date Mailed)
District Director

Enclosures(s)

cc: JEWISH FEDERATION OF METROPOLITAN CHICAGO

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | AMENDED<br>440-2007-02021 |

Illinois Department Of Human Rights and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Yury Selyutin | (847) 965-3699 | 04-13-1939 |

Street Address: 7131 W. Carol Ct., Niles, IL 60714
City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| JEWISH FEDERATION OF METROPOLITAN CHICAGO | 500 or More | (312) 346-6700 |

Street Address: 30 South Wells St., Chicago, IL 60606
City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☐ SEX ☒ RELIGION ☒ NATIONAL ORIGIN
☐ RETALIATION ☒ AGE ☒ DISABILITY ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 07-06-2004  Latest: 12-11-2006

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with the above named Respondent on or about April 23, 1990. My most recent position was Maintenance Worker. From the beginning of my assignment at the Northbrook location, I was subjected to different terms and conditions of employment, including but not limited to my assignments, and scrutiny of job duties. I was also subjected to negative age based comments. I was discharged on December 11, 2006.

I believe I was discriminated against because of my national origin, Russian, in violation of Title VII of the Civil Rights Act of 1964, as amended and because of my age, 67 (DOB: 4/13/1939), in violation of the Age Discrimination in Employment Act of 1967, as amended.

I also believe I was discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990 and because of my religion, Jewish, in violation of Title VII of the Civil Rights Act of 1964, as amended.

JUN 0 4 2007

I want this charge filed with both the EEOC and the State or Local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

6-1-07
Date / Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

JAN-4-1999 MON 05:05PM TO: